UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 16-184 |
| CHRISTOPHER HUTTON | SECTION: "J" |

### ORDER AND REASONS

Before the Court are a *Motion for Review and Revocation of a Detention Order* **(Rec. Doc. 102)** filed by Defendant Christopher Hutton and an opposition thereto (Rec. Doc. 111) filed by the Government. Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that Defendant's appeal should be **DENIED**.

### FACTS AND PROCEDURAL BACKGROUND

On January 11, 2018, Defendant Christopher Hutton was sentenced to a term of imprisonment of ninety-six months after pleading guilty to one count of felon in possession of a firearm. The sentence included a three-year term of supervised release to follow the term of imprisonment. Mr. Hutton's supervised release began on August 1, 2023. Subsequently, the Southern District of Texas assumed courtesy supervision over Mr. Hutton.

Halfway through the term of supervision, in January 2025, the U.S. Probation Office in this district filed a petition for arrest of Mr. Hutton, citing supervision non-compliance. After its issuance, the Government followed with a Rule to Revoke Mr.

1

Hutton's supervised release. As support for revocation, the Government relays two recent arrests of Mr. Hutton, both on charges ultimately dropped. In the first, in November 2024, Mr. Hutton was arrested in Hammond, Louisiana for possessing a car reported stolen in Texas. The Government includes the incident report as an attachment to its rule. (Rec. Doc. 94-4). Second, in February 2025, Mr. Hutton was arrested in Houston, Texas for possession of cocaine with intent to deliver. Houston Police Department Officers describe observing Mr. Hutton and three others conduct suspected hand-to-hand drug transactions out of a car in a gas station parking lot. After the group left the gas station, officers signaled for the car to pull over. Mr. Hutton, however, bolted from the car during the traffic stop. He was arrested by officers twenty minutes later, after assistance from a helicopter unit. Officers listed various amounts of narcotics recovered from the car and passengers, including .84 grams of crack cocaine on Mr. Hutton's person and 2.39 grams of powder cocaine in a backpack on Mr. Hutton's seat in the car. Charges were only brought against Mr. Hutton. One month later, however, the State of Texas moved to dismiss the charges for "Incomplete lab result/No lab report". (Rec. Doc. 94-3 at 3). In addition to the two arrests, the Government states Mr. Hutton was non-compliant with his supervision for failing to receive permission to travel outside the Southern District of Texas in November and to report either incident to his probation officer. A revocation hearing is scheduled for May 8, 2025.

After Mr. Hutton's return to the Eastern District of Louisiana, Magistrate Judge Currault conducted a series of detention hearings. The first concluded with her

ordering Mr. Hutton remanded "pending determination of transfer of supervision". (Rec. Doc. 93). Eastern District of Louisiana Probation Officer Jayne Campbell testified at the hearing regarding the information she had received from the Southern District of Texas. Neither she nor either party presented details about the circumstances of the arrests. After being informed that any order of home confinement would first need to be confirmed with the Southern District of Texas, Judge Currault forecasted her anticipated ruling: "I am going to order that he be released on home detention with location monitoring, and I'll order that he be detained pending the transfer of supervision. And if they won't accept it, then you'll have to come in and explain to me why not and then we can look at alternatives." (Rec. Doc. 100 at 27). Giving Officer Campbell time to confer with the Houston-based Probation Office, Judge Currault ordered that the hearing "resume" two days later. *Id.* at 29–30 ("Mr. Hutton, I am going to order that you be detained until Wednesday, and we'll come back and see if we're going to be able to get a bond for you to go back to Houston, okay.").

When parties reconvened two days later, Judge Currault stated that the matter was being resumed after a recess, determining over the objection of defense counsel that she had not previously ordered a bond for Mr. Hutton and, thus, was not required to reopen a completed detention hearing. The Government then proffered the police reports from Mr. Hutton's arrests. After considering those submissions—particularly the description of Mr. Hutton fleeing from the police in February—Judge Currault ordered Mr. Hutton detained pending the revocation hearing. (Rec. Doc. 101

3

at 12–13 ("Unfortunately, I think with these more details and information, I don't think that you satisfied the burden to rebut the presumption. So I am going to have to order that Mr. Hutton be detained. And that was not what I wanted to do, I'll tell you. But I mean, on a supervised release violation, I'm going to—and I am going to instruct the government to get your motion filed and get it heard promptly because I don't want him detained any longer than he needs to be.")).

Mr. Hutton now appeals the ruling both on its procedural posture and on the merits. The Government responds in opposition.

## **LEGAL STANDARD**

A defendant ordered detained by a magistrate judge may seek review of the detention order in the district court. 18 U.S.C. § 3145(b). The district court reviews the detention order de novo and "must make an independent determination of the proper pretrial detention or conditions for release." *United States v. Rueben*, 974 F.2d 580, 585 (5th Cir. 1992) (citation omitted). Thus, the Court has discretion to weaken or "support what the magistrate has actually ordered with additional findings based on its independent consideration of the record before the magistrate and the additional evidence adduced before it." *United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985).

Where a detention hearing involves a defendant on supervised release, a rebuttable presumption is created that no bond conditions of release would reasonably ensure the appearance of the defendant or the safety of the community. Fed. R. Crim. P. 32.1(a)(6) (adopting the 18 U.S.C. § 3143(a)(1) standard for

defendants on supervised release). The presumption shifts the burden onto the defendant to produce rebutting evidence, but it does not precisely shift the burden of persuasion. *Rueben*, 974 F.2d at 586. Nevertheless, with the presumption applicable, the defendant shall be detained "unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community." 18 U.S.C. § 3143(a)(1).

## DISCUSSION

In his request for review of Judge Currault's April 9, 2025 order, Mr. Hutton faults both the hearing's procedural posture and the ruling's merits. The first is more easily treated.

Mr. Hutton insists Judge Currault "erroneously reopened detention after ordering Mr. Hutton's release on April 7, 2025." (Rec. Doc. 102 at 8). The argument carries weight, as the Government undoubtedly fails under a reopening standard.

In order to reopen a detention hearing, a movant must present to the magistrate judge new and material information applicable to the bond determination:

> The hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f)(2)(B). Here, after a two-day recess, the Government relied on proffered police reports as its new evidence. The evidence, however, in no way could be considered new. As Officer Campbell testified at the Wednesday hearing, the

Probation Office was in possession of the police reports before the hearing's first setting:

> THE COURT: All right. And Officer Campbell, had you seen this report?
>
> THE PROBATION OFFICER: Yes, I have.
>
> THE COURT: Had you seen it before Monday or you just saw it before today?
>
> THE PROBATION OFFICER: Before Monday.
>
> THE COURT: You had seen this report before Monday?
>
> THE PROBATION OFFICER: Yes.

(Rec. Doc. 101 at 7 ll.3–10). Incredibly, the Government did not obtain nor apparently inquire about the police reports—the strongest basis for its bond denial request—before the detention hearing:

> THE COURT: But you hadn't seen it, Mr. Guice?
>
> MR. GUICE: I hadn't seen it, I got it today, your Honor.
>
> THE COURT: I mean, you guys have got to prepare for these hearings. Y'all can't throw late stuff like this. I mean, had I ruled, this would be a problem for you.

*Id.* at 7 ll. 11–15.

Despite the Government's careless preparation for the detention hearing, it has the good luck that Judge Currault did not close the April 7, 2025 hearing by issuing a bond. In that first setting, Judge Currault clearly forecasted how she intended to rule, but she stopped short of issuing Mr. Hutton a bond. Both the Minute Entry and transcript reflect Judge Currault's intent to "resume" the hearing two days later. (Rec. Doc. 93 at 2 ("Detention hearing will resume 4-9-25 @ 2pm."); Rec. Doc.

6

100 at 29 l. 23). Although this resumption statement is placed in relation to whether the Southern District of Texas will reassume supervision, the context alone does not create an order. (Rec. Doc. 100 at 29–30 ll. 23–2 ("We'll resume this hearing on Wednesday at two to assess where we stand in terms of whether they're going to take it or not. And if they're not going to take it, if you have any alternatives you want to propose, I'll hear them."). Instead, Judge Currault still spoke of possible bond "alternatives," and concluded the initial hearing with an order of detention pending more information: "Mr. Hutton, I am going to order that you be detained until Wednesday, and we'll come back and see if we're going to be able to get a bond for you to go back to Houston, okay." *Id.* at 30 ll.6–9. Thus, the April 9, 2025 was a resumption, not a reopening.

This Court, therefore, is left to consider whether Mr. Hutton has rebutted the presumption that he should be detained. And from this clear and convincing standard, this Court cannot conclude that Mr. Hutton is not likely to flee or pose a danger to the safety of any other person or the community. As previously noted, the evidentiary change from April 7 to April 9, 2025 was the introduction of the Hammond and Houston police reports. The Government's heavy reliance on proffered evidence, with no testimonial corroboration, requires careful consideration. Although not reached by this circuit, other federal courts have cautiously permitted such evidence at a detention hearing. *See, e.g., United States v. Vane*, 117 F.4th 244, 251 (4th Cir. 2024) (collecting cases). These circuit decisions are persuasive, as the looser evidentiary rules at detention hearings likely permit such reports as "information" to

consider. 18 U.S.C. § 3142(f)(2)(B) ("The person shall be afforded an opportunity to testify, to present witnesses, to cross-examine witnesses who appear at the hearing, and to present information by proffer or otherwise. The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing.").

Although appropriately considered, the Houston and Hammond police reports must be considered in their full context. Put another way, the Government may not rely on them to prove suspected criminality, but then avoid their ultimate conclusions. Simply, neither arrest led to charges that the Texas and Louisiana authorities felt comfortable pursuing. The more serious Texas incident deserves particular treatment in this light. Although the reports list various narcotics confiscated by arresting officers, the charge against Mr. Hutton was dropped for "Incomplete lab result/No lab report". (Rec. Doc. 94-3 at 3). It is unclear what, if any, weight those narcotic lists deserve in light of the test results.

What does hold weight, however, are the circumstances of Mr. Hutton's arrest in Houston. Mr. Hutton fled from the traffic stop, leading officers on a twenty-minute chase that concluded with the assistance of a helicopter unit. Although defense counsel argued before Judge Currault that flight from arrest is dissimilar from flight risk for court appearance, any daylight between the two is closed by the legal standard before this Court. In light of Mr. Hutton's actions, this Court cannot conclude the presumption of detention has been rebutted, and that on a clear and

convincing basis, that Mr. Hutton is not likely to flee or pose a danger to the safety of any other person or the community. Judge Currault's detention order is affirmed.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Christopher Hutton's *Motion for Review and Revocation of a Detention Order* **(Rec. Doc. 102)** is **DENIED**.

New Orleans, Louisiana this 25th day of April, 2025.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE